UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANTEL ARNOLD,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3332** |
| **JULIO ALVARADO, ET AL.,**<br>    Defendants | **SECTION: "E" (5)** |

### ORDER AND REASONS

Before the Court is a Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(c) or, Alternatively, for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56[1] (the "motion") filed by Defendants, Jefferson Parish Sheriff Joseph P. Lopinto, III and Jefferson Parish Sheriff's Deputy Julio Alvarado. The motion is opposed.[2] For the reasons that follow, the motion is **DENIED.**

### BACKGROUND

On September 16, 2022, Plaintiff sued Defendants for violations of her civil rights through use of excessive force during a September 2021 incident between Plaintiff and Julio Alvarado, a Jefferson Parish Sheriff's deputy.[3] Broadly, Plaintiff alleges the following.[4]

On September 20, 2021, Plaintiff, who is 4'8" tall and weighs less than 100 pounds, was attacked by teenagers on Richard Avenue in Jefferson Parish, Louisiana. Alvarado responded to a 911 call about the fight and arrived at the scene as Plaintiff was walking home. He stopped Plaintiff as she walked, and she told Alvarado she was a victim of the attack and simply wished to go home. Instead, Alvarado "snatched" Plaintiff by the arm,

---

[1] R. Doc. 26.
[2] R. Doc. 32.
[3] *See generally* R. Doc. 1.
[4] *Id.* at pp. 1–13.

1

twisted her arm behind her back, grabbed her hair, lifted her off the ground, and slammed her against the ground multiple times. He then turned her onto her stomach and, using his knee, put the full weight of his body on her back. Two of Plaintiff's family members witnessed the scene and pleaded with Alvarado to stop; he responded by threatening to arrest them. This scene was captured on video and circulated widely in the national media.[5] Ultimately, Plaintiff was not arrested nor charged with a crime.

Initially, Alvarado did not write a report on the incident, and he did not notify his ranking officer of the event. Plaintiff alleges Alvarado later indicated he *would* write a report, and a supervisor told him "not to" because an investigation had been initiated. A subsequent internal affairs investigation faulted Alvarado for his failure to notify his ranking officer and failure to properly document the incident by writing a report, both violations of JPSO policies.

Plaintiff asserted seven causes of action under state and federal law against three Defendants: Alvarado; the Jefferson Parish Sheriff's Office ("JPSO"); and Joseph P. Lopinto, III, the Jefferson Parish Sheriff.[6] The Court later granted Plaintiff's request[7] that JPSO be dismissed as a Defendant.[8]

On December 19, 2023, Defendants Alvarado and Lopinto filed this motion.[9] Alvarado and Lopinto move this Court to "partially dismiss Plaintiff's suit or, alternatively," to grant "partial summary judgment as a matter of law" in their favor on two of Plaintiff's causes of actions: (1) claims against Sheriff Lopinto and the Jefferson

---

[5] *Id.* at p. 5 n.1
[6] *Id.*
[7] R. Doc. 50.
[8] R. Doc. 51.
[9] R. Doc. 26.

Parish Sheriff's Office under the theory of *Monell* liability;[10] and (2) claims of a conspiracy among the Defendants to "cover-up" Alvarado's alleged "brutal use of force."[11] Plaintiff filed a response in opposition and later supplemented her response as ordered by the Court.[12] Defendants replied. [13]

## LAW AND ANALYSIS

Defendants' motion, confusingly captioned a combined motion for judgment on the pleadings and for summary judgment, does not clearly delineate which standard the Defendants seek to apply to each challenged cause of action.

However, based on Defendants' memorandum in support of the motion and the arguments therein, it is apparent the Defendants have supported only a motion for judgment on the pleadings as to both Plaintiff's conspiracy claim and Plaintiff's *Monell* liability claim. Specifically, Defendants argue the Complaint reflects an "absence of any specific allegations of an agreement among the Defendants"[14] and "Plaintiff does not plead" the elements required to allege *Monell* liability.[15]

It is clear that Defendants' arguments with respect to Plaintiff's § 1983 conspiracy to cover up claim are based solely on Plaintiff's alleged failure to state a claim. With respect to Plaintiff's *Monell* claim, though, Defendants *do* at least mention that "the Sheriff in his official capacity is entitled to summary judgment in his favor as a matter of

---

[10] *See Monell v. Department of Social Services*, 436 U.S. 658 (1978).
[11] *See* R. Doc. 1 at pp. 19–20.
[12] R. Docs. 32, 37.
[13] R. Doc. 39.
[14] R. Doc. 26-1 at p. 9.
[15] *Id*. at p. 13. Defendants also argue Plaintiff "cannot show" the necessary elements of a *Monell* liability claim. *Id*. This conflation of the requirements for a motion for judgment on the pleadings and the standard for a motion for summary judgment is no substitute for a proper motion for summary judgment, which would set forth the elements of the causes of action, establish that there are no material facts in dispute with respect to those elements, and explain why the movant is entitled to judgment as a matter of law.

law."[16] But many of the statements Defendants represent are uncontested material facts[17] are, in reality, conclusory statements with no citations.[18] Plaintiff contests many of the "facts" set forth by the Defendants, calling into dispute many of the relevant facts, such as whether the Plaintiff was involved in a fight or was a victim, whether Plaintiff cooperated with Alvarado, and whether Alvarado used excessive force.[19] The Defendants make no serious attempt to establish that there are no material facts in dispute or that they are entitled to judgment as a matter of law. Even if Defendants' motion were evaluated as a motion for summary judgment on Plaintiff's *Monell* claim, the motion would be denied, as there are material facts in dispute. The Court rules on Defendants' motion related to the *Monell* claim accordingly—as a motion for judgment on the pleadings under Rule 12(c).

## I. The Rule 12(c) standard.

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).[20] Under the 12(b)(6) standard, a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[21] "To survive a motion to dismiss [on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22] "A claim has facial plausibility when the

---

[16] *Id.*
[17] *See* Fed. R. Civ. P. 56(c).
[18] *See* R. Doc. 26-3 at pp. 2–3.
[19] *See generally* R. Doc. 37.
[20] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).
[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

4

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[24] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[25]

## II. Plaintiff has sufficiently pleaded that there was an agreement between the parties to support her § 1983 conspiracy to cover up claim.

Plaintiff alleges conspiracy on the basis that "Defendants conspired to cover-up Deputy Alvarado's brutal use of force against [Plaintiff] and the circumstances of the altercation" and thus "Defendants are therefore conspiratorially liable for all torts and misconduct" through 42 U.S.C. § 1983. In their motion, Defendants' only argument is that Plaintiff's Complaint shows an "absence of any specific allegations of an agreement among the Defendants,"[26] so her claim of conspiracy should be dismissed on the pleadings.[27]

---

[23] *Id.*
[24] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[25] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[26] R. Doc. 26-1 at p. 9.
[27] In their reply (R. Doc. 39), Defendants make two additional, but wrong, arguments in favor of dismissing Plaintiff's conspiracy claim. They first argue that a § 1983 conspiracy claim must allege an agreement between private *and* public defendants. An alleged private-public § 1983 conspiracy was at issue in *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994), the case Defendants rely on, but it is inapplicable to this case. A § 1983 conspiracy may be alleged between two or more state actors, and nothing in *Cinel* says otherwise. *See, e.g.*, *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019). Further, Defendants raise a defense based on the intracorporate conspiracy doctrine, arguing that members of the JPSO, by law, cannot conspire among themselves, as they are all agents of the same corporation, JPSO. There are, however, exceptions to the doctrine when the alleged conspirators act "for their own personal purposes," "engage in acts that exceed the bounds of their authority," or "conspire to conceal an incident of excessive force." *Morales v. Carrillo*, 625 F.Supp.3d 587, 608 (W.D. Tex. 2022) (citations and quotations omitted) (collecting cases). At this stage, Plaintiff's allegations are sufficient to trigger each of these exceptions, so the defense does not apply.

To allege the existence of a § 1983 conspiracy, Plaintiff must allege "an agreement between" the alleged conspirators.[28] Defendants argue that Plaintiff's conspiracy claim fails at this step—that she has not alleged an agreement among Defendants to deprive her of her civil rights.[29] While "more than a blanket of accusation is necessary to support a § 1983 claim,"[30] it also true that conspiracies "are rarely evidenced by explicit agreements."[31] Accordingly, "the determination of whether a conspiracy existed almost inevitably rests on the inferences that may fairly be drawn from the behavior of the alleged conspirators."[32] Before a court draws an inference from the behavior, it must examine whether the behavior reveals circumstances that would "warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."[33] At this stage, the Court may make inferences construing the facts in the light most favorable to Plaintiff.[34]

By that standard, the Court finds Plaintiff has alleged a meeting of the minds sufficient to show the existence of a conspiracy. Plaintiff specifically alleges that JPSO had in place written policies requiring Alvarado to write a report on the incident involving Plaintiff,[35] and, as a result, Alvarado violated those policies when he did not write the report. Further, and crucially, Plaintiff alleges that Alvarado was told by a more senior member of the department that he should not write a report, and that senior member

---

[28] *See Bright*, 532 F. Supp. 3d at 398 (W.D. Tex. 2021).
[29] R. Doc. 26-1 at pp. 8–9.
[30] *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).
[31] *Mack v. Newton*, 737 F.2d 1343, 1350 (5th Cir. 1984).
[32] *Id.*
[33] *Id.*
[34] *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021) (citation omitted).
[35] R. Doc. 1 at p. 7

based this instruction on the guidance of yet another more senior member.[36] Plaintiff has sufficiently pleaded there was a meeting of the minds—a conspiracy—to "cover-up" of Alvarado's use of excessive force against her.[37]

The Defendants' motion for judgment on the pleadings as to Plaintiff's § 1983 conspiracy claim must be denied.[38]

### III. Plaintiff has sufficiently pleaded an allegation of *Monell* liability against Sheriff Lopinto in his official capacity.[39]

Plaintiff alleges *Monell* liability on the basis that "Defendants Sheriff Lopinto and JPSO are the final policy makers for JPSO," and they "developed and maintained the policies, customs, and practices which proximately caused the violations of [Plaintiff's] rights."[40] Plaintiff also alleges that these "customs, policies, practices, procedures, and the failures to properly train, supervise, investigate, and discipline wrongful conduct and excessive force by JPSO officers were a moving force and/or proximate cause of the violation of" Plaintiff's rights.[41]

---

[36] *Id.* at pp. 6–7.
[37] *Id.* at p. 20.
[38] Defendants raise qualified immunity as a defense in their answer (R. Doc. 11 at pp. 2–3) and in their memorandum in support of their motion (R. Doc. 26-1 at p.9), but their memorandum simply parrots the legal standard for qualified immunity. In their motion, they include only one sentence in support of this defense, asserting only that they were not on notice "that their conduct[, a conspiracy to cover up,] was unlawful." *Id.* This argument fails. The clearly established law at the time makes plain that a conspiracy to cover up use of excessive force, as Plaintiff alleges here, violates "a right of access to the courts, which is founded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fifth and Fourteenth Amendment Due Process Clauses." *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (citing *Ryland v. Shapiro*, 708 F.2d 967, 971-73 (5th Cir. 1983)). This right of access, which Defendants allegedly violated by their conspiracy, "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974). Defendants were or should have been on notice that the right of access to the courts was a clearly established right and that a cover-up would violate that right. At this stage, Plaintiff has pleaded "facts which, if proved, would defeat [the] claim of immunity." *Waller*, 922 F.3d at 599 (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)).
[39] The defense of qualified immunity does not apply to Plaintiff's *Monell* claims. *See, e.g.*, *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983.").
[40] R. Doc. 1 at p. 19. JPSO has been voluntarily dismissed as a Defendant. R. Doc. 51.
[41] *Id.*

In Defendants' motion for judgment on the pleadings as to Plaintiff's *Monell* liability claims, Lopinto argues that Plaintiff "does not plead and cannot show that any policy of the Sheriff was the moving force behind any alleged Constitutional violation," and that her failure to so plead defeats her cause of action under *Monell*.[42]

A suit against a government official in his official capacity, as Plaintiff brings against Sheriff Lopinto in this case,[43] is treated as a suit against the entity.[44] To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.[45] These three elements are consistent with the Fifth Circuit's added "requirement that a plaintiff [show] either an unconstitutional official policy or a facially innocuous one 'promulgated with deliberate indifference to the "known or obvious consequence[]" that constitutional violations would result.'"[46] "Proof of these three elements is necessary 'to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.'"[47]

Defendants do not challenge that Lopinto is the policymaker for JPSO. Instead, they argue Plaintiff's *Monell* claims fails for two other reasons. First, Defendants argue Plaintiff fails to allege "a pattern or practice" of "unconstitutional conduct" or that "the Sheriff was deliberately indifferent to a known and obvious need to train." Second, they argue that even if "Plaintiff ha[s] alleged such a pattern, practice, or custom, Plaintiff does

---

[42] R. Doc. 26-1 at pp. 12–13.
[43] R. Doc. 1 at p. 3.
[44] *See*, e.g., *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).
[45] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).
[46] *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196 *7 (E.D. La. 2009) (quoting *Piotrowski*, 237 F.3d at 579 (5th Cir. 2009)).
[47] *Id.* at *4 (citing *Piotrowski*, 237 F.3d at 578).

8

not allege and cannot show that [the] same was the moving force behind the alleged harm here."[48]

The Court disagrees. Plaintiff sufficiently alleges a pattern or practice of deliberate indifference by Lopinto in his official capacity, and she clearly alleges that this practice was the moving force behind Alvarado's use of excessive force, a constitutional violation at the core of her § 1983 claim. Accordingly, the Court will deny Defendants' Rule 12(c) motion on the issue of *Monell* liability.

A claim of deliberate indifference "usually requires a plaintiff to demonstrate a *pattern of violations*," that is, "a pattern of *similar incidents in which the citizens were injured*."[49] At this Rule 12(c) stage, the Court finds that Plaintiff has sufficiently alleged such a pattern. In support of her clear allegation that "Defendants Sherriff Lopinto and JPSO adopted and maintained policies, customs, and practices with deliberate indifference"[50] to her constitutional rights, she further alleges that JPSO "has a long history of unreasonable, excessive, and unlawful uses of force against African-Americans and people of color," supporting that allegation with studies and media reports that credibly demonstrate a pattern of similar incidents.[51] She alleges that this pattern continues today, as evidenced by her allegations against Alvarado for use of excessive force,[52] because Lopinto and JPSO fail to "enforce their written policies and procedures, including the Standing Operating Procedures and Use of Force Policy," and she alleges this failure evinces deliberate inference to the constitutional violations that result.[53]

---

[48] R. Doc. 26-1 at p. 13.
[49] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (quotations omitted) (emphasis in original).
[50] R. Doc. 1 at p. 19.
[51] *See id.* at pp. 10–11.
[52] *See id.* at pp. 3–7.
[53] *Id.* at pp. 10–11.

Construing all reasonable inferences in Plaintiff's favor, as this Court must do on a Rule 12(c) motion, this is a sufficient allegation of deliberate indifference.

Plaintiff must also allege "a direct causal link" between this practice of deliberate indifference and an alleged constitutional violation.[54] Plaintiff sufficiently alleges Defendants' deliberate indifference was a moving force behind Alvarado's use of excessive force against her in September 2021, a violation of her constitutional rights.[55] Plaintiff's allegations are clear: because Lopinto and JPSO failed to enforce the policies that are meant to govern the use of force, Alvarado—who "had already accumulated multiple disciplinary infractions and numerous public complaints for use of excessive and unlawful force, most notably against African-Americans and other minorities"—was permitted to remain on the force and patrol the streets of Jefferson Parish.[56] As a result, he engaged Plaintiff during the incident in question and used excessive force against her, grabbing her hair, lifting her off the ground, and "violently slam[ing] her to the ground on multiple occasions."[57] He failed to write a report about the incident, as required by JPSO policy, JPSO "covered-up and tolerated" his actions, and he remained employed thereafter, "perpetuating an unconstitutional cycle of violence."[58]

Again, at this Rule 12(c) stage, this is enough to allege a causal link between the deliberately indifferent practices alleged against JPSO and Alvarado's use of excessive force against Plaintiff. Plaintiff has satisfied the requirement that she show JPSO's practice was the moving force behind the violation of her constitutional rights.

---

[54] *See Piotrowski,* 237 F.3d at 580.
[55] R. Doc. 1 at pp. 11, 13–14.
[56] *Id.* at p. 11.
[57] *Id.* at p. 12.
[58] *Id.*

## CONCLUSION

For the foregoing reasons;

**IT IS ORDERED** that Defendants' Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(c) or, Alternatively, for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56[59] is **DENIED.**

New Orleans, Louisiana, this 12th day of April, 2024.

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[59] R. Doc. 26.