UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANTEL ARNOLD,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  22-3332** |
| **JULIO ALVARADO, ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is Plaintiff Shantel Arnold's Motion to Exclude Dr. Najeeb Thomas.[1] The motion is opposed by Defendants, Jefferson Parish Sheriff Joseph P. Lopinto, III, and Deputy Julio Alvarado.[2] For the reasons that follow, the motion is **DENIED**.

## BACKGROUND

The factual background of this case is set forth more fully in the Court's prior Order and Reasons.[3] On September 16, 2022, Plaintiff sued Defendants under federal and state law for alleged violations of her civil rights during a 2021 incident.[4] In her Complaint, Plaintiff alleges Deputy Alvarado responded to a call, engaged Plaintiff, then twisted her arm, grabbed her hair, lifted her off the ground, and slammed her against the ground.[5] The incident was captured on video and widely circulated in local and national media.[6] Following the encounter, Plaintiff was not cited for any violations nor charged with any crimes.[7]

On May 7, 2024, Plaintiff filed this motion in limine, seeking to exclude Dr. Najeeb

---

[1] R. Doc. 57.
[2] R. Doc. 59.
[3] *See* R. Doc. 53.
[4] *See generally* R. Doc. 1.
[5] *See id.*
[6] *Id.* at p. 5.
[7] *Id.* at p. 4.

Thomas's testimony concerning the traumatic brain injury ("TBI") Plaintiff allegedly sustained during her encounter with Deputy Alvarado.[8] Plaintiff argues Dr. Thomas's testimony is unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[9] and, alternatively, the probative value of his testimony is substantially outweighed by the danger of confusion or undue prejudice, as forbidden by Federal Rule of Evidence 403. Defendants filed their response in opposition on May 14, 2024.[10]

A four-day trial in this matter is set to begin June 17, 2024.[11]

## LEGAL STANDARD

### I.      Motions in Limine

"It is well settled that motions in limine are disfavored."  "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." "An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds."  "Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence 'may be resolved in the proper context."  "When ruling on motions in limine, the Court 'maintains great discretion [as to] evidentiary determinations."'  If the evidence is not clearly inadmissible on all grounds, the better course is for the court to decline to rule in advance of trial so that it will have the opportunity to resolve issues in context.

---

[8] *See generally* R. Docs. 57, 57-1.
[9] 509 U.S. 579 (1993).
[10] R. Doc. 59.
[11] R. Doc. 36.

## II.   Federal Rule of Evidence 702 standard.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert

witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data; (c) the testimony is the
> product of reliable principles and methods; and (d) the expert has reliably
> applied the principles and methods to the facts of the case.[12]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*,[13] provides the analytical framework for determining whether expert testimony is

admissible under Rule 702.

Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary

assessment of whether expert testimony is both relevant and reliable.[14] The party offering

the expert opinion must show by a preponderance of the evidence that the expert's

testimony is reliable and relevant.[15]

The reliability of expert testimony "is determined by assessing whether the

reasoning or methodology underlying the testimony is scientifically valid."[16] In *Daubert*,

the Supreme Court enumerated several non-exclusive factors that courts may consider in

evaluating the reliability of expert testimony.[17] "These factors are (1) whether the expert's

theory can or has been tested, (2) whether the theory has been subject to peer review and

publication, (3) the known or potential rate of error of a technique or theory when applied,

---

[12] Fed. R. Evid. 702.

[13] 509 U.S. 579 (1993).

[14] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).

[15] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

[16] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).

[17] 509 U.S. at 592–96.

(4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[18]

The Supreme Court has cautioned the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[19] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[20] The district court is offered broad latitude in making expert testimony determinations.[21]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[22] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[23] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[24] The Court is not concerned with whether the opinion is correct but whether the preponderance of the evidence establishes that the opinion is reliable.[25] "It is the role of the adversarial system, not the court, to highlight weak evidence."[26]

---

[18] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[19] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[20] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[21] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[22] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[23] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[24] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[25] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[26] *Primrose*, 382 F.3d at 562.

"[E]xpert testimony proffered" must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[27] This is essentially a relevance requirement: relevant evidence, including relevant expert testimony, is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[28] Thus, "[i]f the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded."[29]

## LAW AND ANALYSIS

Dr. Thomas is a neurosurgeon with more than twenty years' experience.[30] Plaintiff does not challenge Dr. Thomas's qualifications as an expert in this area.[31] Defendants retained Dr. Thomas to offer his expert opinion on whether the actions of Deputy Alvarado could have caused the TBI Plaintiff alleges she suffered as a result of the incident.[32]

Dr. Thomas reviewed dozens of Plaintiff's medical records dating back to 2010.[33] These records covered a wide range of medical care provided to Plaintiff, including emergency medicine, ophthalmology, general medicine and routine care, gynecology, and neurology.[34] Dr. Thomas also reviewed x-rays corresponding to certain of Plaintiff's medical records and videos of the alleged incident at the center of Plaintiff's suit.[35]

As relevant to Plaintiff's motion, Dr. Thomas concludes in his report that the

---

[27] *Denley v. Hartford Ins. Co. of Midwest*, No. 07-4015, 2008 WL 2951926, at *3 (E.D. La. July 29, 2008) (citing *Daubert*, 509 U.S. at 591).
[28] *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002).
[29] *Id.*
[30] R. Doc. 59-1, Deposition of Dr. Najeeb Thomas (hereafter "Thomas Dep.") at 5:13–16.
[31] *See generally* R. Doc. 57-1; *accord* R. Doc. 59 at p. 2.
[32] R. Doc. 59 at p. 2.
[33] R. Doc. 57-3 at pp. 1–5.
[34] R. Doc. 57-3 at pp. 1–5.
[35] R. Doc. 57-3 at p. 5.

"periventricular white matter changes" apparent in an April 2022 MRI of Plaintiff's brain "were not related to the incident of September 2021" involving Deputy Alvarado.[36] In his deposition, Dr. Thomas opined that the changes in the white matter in Plaintiff's brain could have been caused by "undiagnosed hypertension," "atherosclerotic disease," "ischemic changes," or other "previous injuries."[37] Dr. Thomas also opined that Plaintiff's presentation at the emergency room on September 20, 2021, the day of her altercation with Deputy Alvarado, "would not be consistent with any moderate or severe brain injury."[38]

Plaintiff's motion seeks to exclude Dr. Thomas's testimony as unreliable under Rule 702 and *Daubert* and because it is unduly prejudicial under Rule 403.[39] Plaintiff does not challenge Dr. Thomas's qualifications. Rather, Plaintiff argues Dr. Thomas's testimony is unreliable for three reasons: it is "speculative"; it is "based on insufficient facts and information"; and it "lacks an analytical base."[40] Accordingly, Plaintiff argues Dr. Thomas's testimony is unduly prejudicial under Rule 403 because any limited probative value is substantially outweighed by the danger that it could confuse the jury as to the cause of Plaintiff's alleged TBI.[41]

Plaintiff argues Dr. Thomas's testimony is speculative and "conjectural" for two reasons: "Dr. Thomas did not provide any evidence in his report or [since] that Plaintiff suffers from 'undiagnosed hypertension,' 'atherosclerotic disease,' or ischemia," all of which Dr. Thomas offers as possible explanations for the observed changes in white matter in the April 2022 MRI.[42] Second, Plaintiff argues Dr. Thomas did not "cite any

---

[36] R. Doc. 57-3 at pp. 5–6.
[37] Thomas Dep. at 69:1–80:25; R. Doc. 57-3 at p. 6.
[38] R. Doc. 57-3 at p. 6.
[39] R. Doc. 57.
[40] R. Doc. 57-1 at pp 5–8.
[41] R. Doc. 57- at pp. 9–10.
[42] R. Doc. 57-1 at p. 5.

scientific evidence" that the "periventricular white matter changes" seen in the April 2022 MRI was caused by undiagnosed hypertension, atherosclerotic disease, or ischemic changes."[43] Plaintiff argues Dr. Thomas's testimony is thus "completely speculative and must be excluded."[44]

Further, Plaintiff argues Dr. Thomas's testimony "is based on insufficient facts and information" because Dr. Thomas "did not review all the necessary medical records related to Plaintiff's TBI."[45] Specifically, Plaintiff notes Dr. Thomas did not review an electroencephalogram ("EEG") conducted by Plaintiff's treating physician.[46] Plaintiff includes excerpts from Dr. Thomas's deposition during which he testifies that "there's some information [about injuries to Plaintiff's brain] that you could obtain by reviewing the EEG and the [corresponding] report in a more detailed way."[47]

Plaintiff's last ground for challenging Dr. Thomas's testimony under Rule 702 and *Daubert* is that Dr. Thomas's opinion "lacks an analytical base," namely, any "evidence that Plaintiff suffers" from any of the conditions that Dr. Thomas opines may have caused the changes in Plaintiff's white matter. Plaintiff again reiterates that Dr. Thomas did not introduce any evidence that changes in the periventricular white matter could be caused by hypertension, atherosclerotic disease, or ischemia.[48]

On the basis of these arguments, Plaintiff also moves to exclude Dr. Thomas's testimony under Rule 403, arguing that because Dr. Thomas "does not rely on any test he administered or sources of information that prove" his opinions about the possible causes of the changes in Plaintiff's white matter . . . the probative value of [Dr. Thomas's]

---

[43] R. Doc. 57-1 at p. 5.
[44] R. Doc. 57-1 at p. 5.
[45] R. Doc. 57-1 at p. 5.
[46] R. Doc. 57-1 at p. 6.
[47] R. Doc. 57-1 at p. 6 (citing Thomas Dep. 42:1–43:25.
[48] R. Doc. 57-1 at pp. 8–10.

testimony is substantially outweighed by the danger of confusion or undue prejudicial effect on the jury."[49]

In response, Defendants accuse Plaintiff of misstating Dr. Thomas's testimony in her motion in limine. Defendants describe Dr. Thomas's "base opinion" as being "that there is no medical evidence that Plaintiff sustained a moderate or server brain injury as a result of the incident sued upon." Defendants note Dr. Thomas based this opinion upon a thorough review of Plaintiff's medical records. Defendants argue that, one of Dr. Thomas's observations was that Plaintiff "did not have in the medical records any diagnosis . . . of traumatic brain injury or anything previous" to the incident sued upon.[50] Dr. Thomas offered the opinion that, because the medical records did not show Plaintiff presenting symptoms of a traumatic brain injury, which is one cause of changes in the brain's white matter, the changes could be due to other causes that would present in an "asymptomatic" way, when "most patients don't even know they have them"—undiagnosed hypertension, atherosclerotic disease, ischemia, "or whatever the case may be."[51]

On this basis, Defendants' argue Dr. Thomas's testimony is reliable, relevant, appropriately based on hypothetical facts when offered by Plaintiff's counsel in his deposition, and thus admissible.

For the most part, Plaintiff's objection goes to the weight and not the admissibility of the expert's testimony. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[52] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

---

[49] R. Doc. 57-1 at pp. 9–10
[50] R. Doc. 59 at p. 7 (citing Thomas Dep. at 96:24–97:14).
[51] R. Doc. 59 at pp. 5–10; Thomas Dep. at 96:24–97:14.
[52] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).

appropriate means of attacking shaky but admissible evidence."[53] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [factfinder's] consideration."[54] "Furthermore, experts may rely on one version of disputed facts in forming their opinions."[55] Even "arguments [that] attack the weight of [an expert's] methodology . . . may be explored on cross-examination."[56] It is "the role of the adversarial system, not the court, to highlight weak evidence."[57] "Courts break from this general rule in exceptional circumstances, such as when an expert's testimony relies on 'completely unsubstantiated factual assertions.'"[58] Plaintiff may cross-examine Dr. Thomas as to the bases and sources of his opinions and highlight any weaknesses in his testimony for the benefit of the jury.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude Dr. Najeeb Thomas is **DENIED**.[59]

**New Orleans, Louisiana, this 6th day of June, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[53] *Daubert*, 509 U.S. at 596; *see also 14.68 Acres of Land*, 80 F.3d at 1078 (quoting *Daubert*, 509 U.S. at 596).

[54] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

[55] *McCrary v. John W. Stone Oil Distrib., L.L.C.*, No. 14-880, 2016 WL 760744, at *3 (E.D. La. Feb. 26, 2016) (first citing *Moore v. Int'l Paint, L.L.C.*, 547 Fed. App'x 513, 515 (5th Cir. 2013); and then citing *Paz v. Brush Engineered Materials, Inc.*, 482 F.3d 383, 389 (5th Cir. 2009)).

[56] *See Henson v. Deepwell Energy Sers., LLC*, No. 20-141, 2021 WL 3388036, at *10 (E.D. La. June 14, 2021); *see also Dutch Bro LLC v. DutchPro B.V.*, No. A-16-CV-509-LY, 2017 WL 7052291, at *5 (W.D. Tex. Oct. 31, 2017) ("Given Plaintiff's explanation for the expert's methodology and the fact that this case will be tried to a bench experienced in evaluating expert testimony, Defendant's concerns about the expert's methodology will be best addressed through 'vigorous cross-examination [and] presentation of contrary evidence.'" (quoting *Daubert*, 509 U.S. at 596)).

[57] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

[58] *McCrary*, 2016 WL 760744, at *3 (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)).

[59] R. Doc. 57.